## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| THE AARDEMA GROUP, LLC, an Idaho limited liability company, DONALD JOHN AARDEMA, an individual, RONALD J. AARDEMA, an individual, and DONALD J. AARDEMA, an individual, doing business as AARDEMA DAIRY; and DON AARDEMA, an individual, and RON AARDEMA, an individual, doing business as DOUBLE A DAIRY,<br><br>        Plaintiffs,<br><br>        vs.<br><br>NORTHWEST DAIRY ASSOCIATION, a Washington corporation, DARIGOLD, INC., a Washington corporation, individually and doing business as WESTFARM FOODS, B.F. "TOY" SMITH, an individual, DOES I-X, and BUSINESS ENTITY DOES I-X,<br><br>        Defendants. | Case No.:  CV 09-0045-EJL-REB<br><br><br>**REPORT AND RECOMMENDATION RE:**<br><br>**Plaintiffs' Motion to Remand (Docket No. 6)**<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**Defendants' Motion to Strike Portions of the Affidavit of Ronald J. Aardema (Docket No. 11)** |

Currently before the Court are (1) Plaintiffs' Motion to Remand (Docket No. 6) and (2) Defendants' Motion to Strike Portions of the Affidavit of Ronald J. Aardema (Docket No. 11). Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Report and Recommendation and Memorandum Decision and Order:

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 1**

## I.  INTRODUCTION

In November 2004, Plaintiffs (collectively "Aardema") entered into a Membership and Marketing Agreement (the "Agreement") with Defendant Northwest Dairy Association ("NDA") to market Aardema's dairy products.  Pursuant to the Agreement, Aardema became a member of the NDA Cooperative.  *See* Compl., ¶¶  11 & 12 (Docket No. 1, Att. 6).  This case stems from the purchase and sale of Aardema's milk by and to the NDA Cooperative.  Plaintiffs generally allege that Defendants, acting through their agents, withheld important information concerning the forward milk pricing market, including particular Forward Milk Pricing Contract Offers.  *See id*. at ¶¶  18 & 23-25.

Plaintiffs, who are Idaho citizens or Idaho-based businesses, filed this action in Idaho state court, asserting claims of (1) fraud and (2) breach of fiduciary duty against all Defendants.  *See id*. at ¶¶ 16-32.  Although Defendant B.F. "Toy" Smith is also an Idaho resident, on February 5, 2009, Defendants removed this case to federal court.  Defendants contend that Plaintiffs have no tenable cause of action against Defendant Smith, personally, and that he was fraudulently joined solely to frustrate diversity jurisdiction.  *See* Notice of Removal, pp. 5-10 (Docket No. 1).  Defendants then moved to dismiss Plaintiffs' Complaint under FRCP 12(b)(6) on February 12, 2009.  *See* Mot. to Dismiss (Docket No. 5).  On March 5, 2009, Plaintiffs moved to remand this matter back to state court.  *See* Mot. to Remand (Docket No. 6).

This Court is a court of limited jurisdiction.  Therefore, to ascertain whether this Court has jurisdiction over the claims raised in Plaintiffs' Complaint, Plaintiffs' Motion to Remand (Docket No. 6) and Defendants' related Motion to Strike Portions of the Affidavit of Ronald J. Aardema (Docket No. 11) will be considered first.  With this in mind, the Court is tasked only

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 2**

with determining whether Defendant Smith was fraudulently joined to prevent diversity jurisdiction. If so, this Court will retain jurisdiction over the action and Defendants' Motion to Dismiss (Docket No. 5) will then be heard and considered; if not, the action will be remanded to state court.

## II.  DISCUSSION

### A.      Removal and Fraudulent Joinder

The removal statute is strictly construed against removal jurisdiction; indeed, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). This "strong presumption against removal means that the defendant always has the burden of establishing that removal is proper." *Id*. Where fraudulent joinder is claimed in justifying removal, "there is an even greater burden" on the defendant. *See Ballesteros v. Am. Standard Ins. Co. of Wisconsin*, 436 F. Supp. 2d 1070, 1072 (D. Ariz. 2006).

Removal of a lawsuit based upon diversity of citizenship ordinarily requires complete diversity of citizenship. However, an exception to the complete diversity requirement exists where a non-diverse defendant has been fraudulently joined. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state . . . ." *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318  (9th Cir. 1998). In this respect, courts must initially resolve . . . all ambiguities in the controlling state law in favor of the non-removing party. [The court] then determine[s] whether that party has any possibility of recovery against the party whose joinder is questioned."

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 3**

*Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992); *see also Candy v. 474 Club LLC*, 2007 WL 1381806, *2 (D. Idaho 2007) (unpublished).  Stated differently, "'the defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant.'"  *Candy*, 2007 WL 1381806 at *2 (quoting *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998)).  "Obviously, this standard is 'more lenient than the standard for motions to dismiss.'"  *Candy*, 2007 WL 1381806 at *2 (quoting *Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 995 (D. Nev. 2005)).[1]

        Accordingly, if the facts alleged in Plaintiffs' Complaint, taken as true and drawing all inferences in Plaintiffs' favor, can possibly state a claim under Idaho law against Defendant Smith, there is no fraudulent joinder and the case must be remanded to state court.  *See Knutson*, 358 F. Supp. 2d at 993 ("[A] plaintiff need only have one potentially valid claim against a non-diverse defendant" to survive fraudulent joinder challenge).

---

        [1]  *See also Albi v. Street & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944) ("[W]here it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the case in state court.  A merely defective statement of the plaintiff's action does not warrant removal . . . .  It is only where the plaintiff has not, in fact, a cause of action against the resident defendant, and has no reasonable ground for supposing he has, and yet joins him in order to evade the jurisdiction of the federal court, that the joinder cannot be said to be fraudulent"); *Alderman v. Pitney Bowes Mgmt. Servs.*, 191 F. Supp. 2d 1113, 1116 (N.D. Cal. 2002) ("[D]oubt arising from merely inartful, ambiguous, or technically defective pleadings should be resolved in favor of remand."); *Filla v. Norfolk Southern Ry. Co.*, 336 F.3d 806, 811 (8th Cir. 2003) (if there is a "colorable" cause of action, joinder is not fraudulent and remand is mandatory); *Perez v. AT&T Co.*, 139 F.3d 1368, 1380-1381 (11th Cir. 1998) (in fraudulent joinder inquiry, federal courts do not weigh merits of plaintiff's claim beyond determining whether claim is arguable under state law); *Mayes v. Rappoport*, 198 F.3d 457, 463-64, 66 (4th Cir. 1999) ("glimmer of hope" that plaintiff can establish claim is sufficient to preclude application of fraudulent joinder doctrine); *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993) (finding of fraudulent joinder appropriate only if there is no possibility that claim can be stated).

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 4**

**B.     It is Possible for Plaintiffs to State a Fraud Claim Against Defendant Smith Under Idaho Law**

In Idaho, a fraud claim requires nine elements: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.  *Chavez v. Barrus*, 146 Idaho 212, 192 P.3d 1036, 1047 (2008); *see also* IDJI 4.60.[2]  Here, Defendants argue that Plaintiffs have not stated a viable fraud claim against Defendant Smith because, first, Plaintiffs' allegations in this respect are not pleaded with the requisite level of particularity as required under both FRCP 9(b) and IRCP 9(b); and, second, Plaintiffs' allegations against Defendant Smith do not support a fraud claim in any event.  *See* Defs.' Resp. to Pls.' Mot. to Remand, pp. 7-11 (Docket No. 12).  At this stage of the litigation, both arguments fall short of their mark.

1.     Plaintiffs' Alleged Procedural Defects Do Not Preclude Remanding the Action to State Court

Fraud claims must be pleaded with particularity.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"); *see also* Idaho R. Civ. P. 9(b) ("[T]he circumstances constituting fraud or mistake . . . shall be stated with particularity.").  However, it cannot be said that one's alleged failure to plead a fraud claim with particularity necessarily forecloses the *possibility* that a fraud claim may nonetheless exist - the very standard applied when addressing fraudulent joinder (*see supra* at

---

[2]  Moreover, actionable fraud or misrepresentation includes "concealment or failure to disclose a . . . material fact, where under the circumstances there was an obligation to disclose it during the transaction."  *See Staff of Idaho Real Estate Comm'n v. Nordling*, 135 Idaho 630, 635, 22 P.3d 105, 110 (2001) (citing *Tusch Enters. v. Coffin*, 113 Idaho 37, 42, 740 P.2d 1022, 1027 (1987)).

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 5**

pp. 3-4).[3]  In other words, a plaintiff's failure to plead a fraud claim against a defendant with

particularity does not mean that defendant was fraudulently joined.  *See, e.g.*, *Candy*, 2007 WL

1381806 at *3 (for remand purposes, "[t]he Court could . . . agree that many of the claims fail to

fully and completely articulate all the particulars of a given cause of action.  [But] [t]he Court

cannot agree that there is no possibility the [p]laintiff can set forth a viable claim against

[d]efendant . . . .");[4] *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1284 (11th Cir.

2006) ("Our task is not to gauge the sufficiency of the pleadings in this case.  Our inquiry is

more basic: we must decide whether the defendants have proven . . . that no Alabama court could

---

[3]  Plaintiffs rely upon this distinction in arguing that, "even when a defense of failure to plead fraud with particularity is submitted in the context of a motion to dismiss under [FRCP] 12(b)(6), in which the Court would employ a more exacting standard with respect to Plaintiffs' Complaint tha[n] in the context of the current motion, 'a dismissal without leave to amend is improper unless it is beyond doubt that the complaint could not be saved by any amendment.'" *See* Mem. in Supp. of Pls.' Mot. to Remand, p. 14, n. 1 (Docket No. 6, Att. 2) (quoting *Read v. Teton Springs Golf & Casting Club, LLC*, 2009 WL 89222, * 1 (D. Idaho 2009) (quoting *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005))); *see also Jones v. Life Ins. Co. of Georgia*, 336 F. Supp. 2d 631, 636-37 (S.D. Miss. 2004) (finding defendants' argument that plaintiff failed to plead fraud claim with sufficient particularity unpersuasive when "[p]laintiff may simply amend her complaint to plead her claims more specifically."); *Todd Holding Co., Inc. v. Super Valu Stores, Inc.*, 744 F. Supp. 1025, 1028 (D. Colo. 1980) ("[I]f the plaintiffs have not sufficiently pleaded fraud, dismissal is not the only option.  '[L]eave to amend shall be freely given when justice so requires.'" (quoting Fed. R. Civ. P. 15(a)).  Defendants do not address this discrete point.

[4]  Applying this rationale to a plaintiff's particular fraudulent inducement claim, District Judge Edward J. Lodge commented:

> Even assuming, without deciding, that Defendants are correct on [their argument that the allegations are not presented with sufficient particularity,] it does not satisfy their burden of showing that there is no possibility the Plaintiff will be able to adequately plead this cause of action.  And that is what is required for the Defendants to demonstrate that the Plaintiff has fraudulently joined Defendant White to this action.

*See Candy*, 2007 WL 1381806 at *3.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 6**

find this complaint sufficient . . . .");[5] *Waterloo Coal Co., Inc. v. Komatsu Mining Sys., Inc.*, 2003 WL 124137, *4 (S.D. Ohio 2003) ("Although Fed. R. Civ. P. 9(b) requires that fraud be pleaded with particularity, Waterloo's failure to do so does not lead this Court to conclude that Waterloo may not have a colorable claim under state law for fraudulent inducement.").[6] Therefore, the issue now before this Court is not whether Plaintiffs properly pleaded their fraud claim against Defendant Smith; but, rather, whether such a claim is possible in Idaho state court, despite any procedural shortcomings that may exist in the way Plaintiffs articulated that claim.

Defendants raise legitimate points regarding potential infirmities in the degree of specificity of Plaintiffs' allegations against Defendant Smith.[7] Still, such questions do not preclude outright Plaintiffs' remand effort. If, in fact, Plaintiffs' Complaint lacks the necessary level of particularity, the state court from which this action was originally removed is more than

---

[5] The Eleventh Circuit in *Henderson* went on to state:

> In this case, the decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands.

*See Henderson*, 454 F.3d at 1284.

[6] Defendants offer no authority for applying the particularity requirement when deciding if a defendant is fraudulently joined. *See* Defs.' Resp. to Pls.' Mot. to Remand, p. 7 (Docket No. 12) (cited cases relate to particularity requirement generally; however, not in context of resolving question of fraudulent joinder).

[7] Within Plaintiffs' briefing (*see* Mem. in Supp. of Pls.' Mot. to Remand, pp.12-13 (Docket No. 6, Att. 2); Pls.' Reply in Supp. of Pls.' Mot. to Remand, p. 6 (Docket No. 22)), there are a number of factual contentions relative to Plaintiffs' fraud claim against Defendant Smith that appear to be without any citation. Moreover, during oral argument, Plaintiffs' counsel seemed to generalize, rather than individualize, the Complaint's fraud allegations relating to Defendant Smith. Even so, any question as to the particularity of Plaintiffs' fraud allegations is not dispositive of the issue of remand.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 7**

capable of deciding as much.  Until then, because it is conceivable that a fraud claim may exist

as to Defendant Smith (as pleaded in either the existing or any future amended pleadings), this

Court's jurisdiction is in question.  As a result, Plaintiffs' alleged procedural defect will not

preclude remanding the action back to state court.

     2.    <u>A Fraud Claim Against Defendant Smith, Individually, is Not Absolutely
Precluded Under Idaho Law</u>

While Defendants correctly point out that, in Idaho, agents are not individually liable for

a corporation's conduct (*see* Defs.' Resp. to Pls.' Mot. to Remand, p. 9 (Docket No. 12)), a

"well-recognized exception" exists when an agent directs or sanctions the alleged wrongful act.

*See L.B. Indus., Inc. v. Smith*, 631 F. Supp. 922, 925 (D. Idaho 1986) ("[M]erely being an . . .

agent of a corporation does not render one personally liable for a tortious act of the corporation.

Specific direction or sanction of, or active participation or cooperation in, a positively wrongful

act of commission or omission which operates to the injury or prejudice of the complaining party

is necessary to generate individual liability and damages of an . . . agent of a corporation for the

tort of the corporation.").

Here, Plaintiffs assert that Defendant Smith's involvement in the alleged fraud went

beyond being a mere agent for NDA.  For example, while many of the allegations supporting

Plaintiffs' fraud claim apply generally to "Defendants" (*see* Compl. at ¶¶ 23-30 (Docket No. 1,

Att. 6)), it is clear that Plaintiffs premise their alleged fraud claim on the particular conduct of

NDA's agents, including Defendant Smith.  *See id.* at ¶ 23 ("Defendants . . . acting through their

agent[ ] Defendant[ ] Smith . . . committed fraud through commission and omission by failing to

fully disclose relevant information . . . .").  Plaintiffs further assert that these alleged

(mis)representations (including the "Forward Milk Pricing Contract Program," generally; and the

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 8**

"Forward Milk Pricing Contract Offers" submitted on December 6, 2006, specifically (*see id.*))

were (1) false, (2) material, (3) known to be false by Defendants, including Defendant Smith, (4)

intended to be relied upon by Plaintiffs, and (5) actually and justifiably relied upon by Plaintiffs

to their detriment. *See id.* at ¶¶ 26-29; 31-32.

Through Plaintiff Ronald J. Aardema's Affidavit in support of Plaintiffs' Motion to

Remand (Docket No. 6, Att. 2), Plaintiffs attempt to identify details of their fraud claim against

Defendant Smith, while also countering the representations made by Defendant Smith in his own

Declaration in support of Defendants' Notice of Removal (Docket No. 1, Att. 9).[8]  Plaintiff

Ronald J. Aardema's Affidavit and Defendant Smith's Declaration clash in many substantive

respects; however, any ambiguities resulting therefrom are to be resolved in favor of Plaintiffs

and, thus, Plaintiffs' attempt to remand. *See supra* at pp. 3-4.[9]

In following this standard, as it must, this Court does not opine on the ultimate merits of

Plaintiffs' fraud claim against Defendant Smith or, for that matter, Defendants' anticipated

---

[8]  In ruling on a fraudulent joinder question, courts may choose to look "beyond the pleadings" or to what has been referred to in some judicial opinions as "summary-judgment-type evidence." *See* Defs.' Resp. to Pls.' Mot. to Remand, pp. 2-3 (Docket No. 12) (citing *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001)).  However, courts are likewise cautious to use this procedure sparingly and not pre-try the merits of the case, engage in extensive fact-finding, or shift the burden of persuasion on the question of fraudulent joinder. *See* 13F Fed. Prac. & Proc. Juris.3d § 3641.1.

[9]  Applying a FRCP 56(e)-type standard toward testing the admissibility of evidence presented via affidavit, Defendants challenge several portions of Plaintiff Ronald J. Aardema's Affidavit.  *See* Defs.' Mot. to Strike (Docket No. 11).   While Defendants' arguments in this respect are well-taken in certain instances, they do not rise to the level of an all-out evisceration of Plaintiffs' fraud claim against Defendant Smith; even the allegedly problematic statements in Plaintiff Ronald J. Aardema's Affidavit, although possibly inadmissible in other procedural contexts, are still instructive when deciding if a fraud claim against Defendant Smith potentially exists in Idaho state court - this Court's assignment when addressing Plaintiffs' Motion to Remand.  *See infra* at pp. 14-18.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 9**

motion to dismiss - either here in federal court or in state court.  *See Candy*, 2007 WL 1381806 at *3, fn. 4 ("Because the standard for determining whether Defendants have shown that White is a sham defendant is different than the standard bearing on the motions to dismiss, nothing in this Order can or should be deemed dispositive as to any motion to dismiss.").  Instead, given the various questions of fact specific to Plaintiffs' fraud claim against Defendant Smith (which the Court is neither charged with nor interested in resolving here), coupled with Plaintiffs' recitation, albeit scant, of the *prima facie* elements of fraud, there appears to be no basis to conclude that, under Idaho law, Plaintiffs are absolutely precluded from asserting a fraud claim against Defendant Smith individually.  *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (when determining whether party has been fraudulently joined, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.  If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.").  The case should be remanded.

**C.      It is Possible for Plaintiffs to State a Breach of Fiduciary Duty Claim Against Defendant Smith Under Idaho Law**

In Idaho, "[t]o establish a claim for breach of fiduciary duty, plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached."  *Tolley v. THI Co.*, 140 Idaho 253, 261, 92 P.3d 503, 511 (2004).

Within their Complaint, Plaintiffs assert generally that "Defendants" maintained a fiduciary relationship with Plaintiffs given "their" status as members of the NDA cooperative.  *See* Compl. at ¶ 17 (Docket No. 1, Att. 6).  Moreover, consistent with their fraud claim, Plaintiffs allege that Defendants breached numerous fiduciary duties owed to them by withholding

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 10**

important information concerning the forward milk pricing market.  *See Id*. at ¶ 18 (identifying breaches as withholding information regarding (1) "the nature of [Defendants'] speculation and dealings regarding the Forward Milk Pricing Program and the specific Forward Milk Pricing Contract Offers;" (2) "subsequent anticipated changes in the forward milk pricing market;" (3) "Defendants' intent to hedge the Plaintiffs' Froward Milk Pricing Contract should it be accepted;" and (4) "other information regarding the contracts not disclosed to Plaintiffs.").

According to Plaintiffs, these allegations state a claim against all Defendants, including Defendant Smith, individually, for breach of fiduciary duty under Idaho law.  Defendants disagree, arguing that Plaintiffs have not stated a tenable claim that Defendant Smith breached any fiduciary duty he, personally, owed to Plaintiffs.  *See* Defs.' Resp. to Pls.' Mot. to Remand, p. 11 (Docket No. 12).  In particular, Defendants again claim that Plaintiffs' breach of fiduciary duty claim is not pleaded with sufficient particularity (*see id*. at pp. 11-12) and, even if no such requirement exists, the Complaint (even when considering Plaintiff Ronald Aardema's Affidavit) still fails for the lack of even a general description of the circumstances implying a fiduciary relationship between Plaintiffs and Defendant Smith (*see id*. at pp. 12-17).  These arguments, whatever their ultimate strength may be, are not enough to close the gate on Plaintiffs' case so as to keep it in federal court at this stage of the litigation.

First, it is unclear in what contexts, if any, a breach of fiduciary duty claim in Idaho must be pleaded with particularity under either FRCP 9(b) or IRCP 9(b).  Regardless, like Defendants' identical argument with respect to Plaintiffs' fraud claim, there appears to be no authority (offered by any party or, separately, located by this Court) compelling a finding of fraudulent joinder where a claim for breach of fiduciary duty is not pleaded with particularity.  *See supra* at

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 11**

pp. 5-8.  In contrast, as previously discussed, comparable authority exists for allowing remand in situations where fraudulent joinder is asserted to allow the state court, interpreting Idaho state law, the opportunity to rule on whether  IRCP 9(b)'s particularity requirements also apply to breach of fiduciary duty claims and, if so, whether Plaintiffs' allegations specific to Defendant Smith meet that requirement.  Until then, it is premature for this Court to comment on such an unresolved point, particularly when its own jurisdiction to preside over the case remains at issue.

Second, while Defendants appropriately question the existence of a specific fiduciary relationship between Plaintiffs and Defendant Smith, in Idaho, "[a] fiduciary relation exists between two parties when one is under a duty to act or to give advice for the benefit of the other upon a matter within the scope of the relation."  *See Podolan v. Idaho Legal Aid Servs.*, 123 Idaho 937, 946, 854 P.2d 280, 289 (Ct. App. 1993) (citing Restatement (Second) of Torts § 874 comment a (1979)); *see also Stearns v. Williams*, 72 Idaho 276, 288, 240 P.2d 833, 840-41 (1952) ("A fiduciary relationship does not depend upon some technical relation created by or defined in law, but it exists in cases where there has been a special confidence imposed in another who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of one reposing the confidence.").

Even with these legal standards in mind, Defendants argue that nothing can be extracted from Plaintiffs' bare allegations against Defendant Smith specific to an individualized claim for breach of fiduciary duty.  The allegations are indeed scant - particularly as they relate to Defendant Smith himself.  However, the apparent genesis of Plaintiffs' breach of fiduciary duty claim seems to center on their contact with Defendant Smith.  *See* Ronald J. Aardema Aff. at ¶¶ 4-5 (Docket No. 6, Att. 2) ("[A]t all times during the discussions of [the Forward Milk Pricing

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 12**

Contract], my only contact with NDA was through B.F. "Toy" Smith. . . . ." "Toy Smith was our contact person for NDA.  In regards to the Forward Milk Pricing Contracts, all communications that went from us to NDA or from NDA to us in that regard were made through Toy Smith.").[10] Whether these interactions, in the context of Plaintiffs' Forward Milk Pricing Contract with NDA, amounts to an actual fiduciary relationship between Plaintiffs and Defendant Smith is neither capable of resolution given the record before the Court,[11] nor a query that this Court is capable of answering given the questions surrounding its jurisdictional ability to do so.[12]

---

[10]  Citing *Slottow v. Am. Cas. Co. of Reading, Pa.*, 10 F.3d 1355, 1359 (9th Cir. 1993), Defendants argue that "a corporation's employees owe no independent fiduciary duty to a third party with whom they deal on behalf of their employer." *See* Defs.' Resp. to Pls.' Mot. to Remand, p. 15 (Docket No. 12) (internal citations omitted).  However, a further reading of *Slottow* reveals, like fraud, that an employee's/agent's "personal direction" or "participation" in the tort exposes that employee/agent to a risk of personal liability.  *See Slottow*, 10 F.3d at 1359; *see also Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1139, n. 100 (C.D. Cal. 2003) ("'Directors and officers of a corporation . . . may become liable if they directly ordered, authorized or participated in the tortious conduct.'" (quoting *Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 785, 157 Cal. Rptr. 392, 598 P.2d 45 (1979))).  In other words, notwithstanding Defendant Smith's alleged direct involvement, there appears to be no hard-and-fast rule universally proscribing a breach of fiduciary duty claim against an individual employee acting on behalf on an employer.

[11]  With both the existing and a more developed record, determining whether Defendant Smith (as distinct from NDA itself) owed a fiduciary duty to Plaintiff necessarily requires an examination of the substantive merits that may be inappropriate when deciding whether this action should be remanded.

[12]  The legal authority Defendants cite to support their argument against Plaintiffs' breach of fiduciary duty claim largely involves summary judgment proceedings.  *See* Defs.' Resp. to Pls.' Mot. to Remand, pp. 14-16 (Docket No. 12) (citing *St. Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, Case No. CVOC 0408219D (May 21, 2007); *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 150 P.3d 288 (Idaho 2006); *Wade Baker & Sons Farms v. Corporation of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 136 Idaho 922, 42 P.3d 715 (Ct. App. 2002); *Jones v. Runft, Leroy, Coffin & Matthews, Chtd.*, 125 Idaho 607, 873 P.2d 861 (Idaho 1994); *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865 (9th Cir. 2007); *Flegles, Inc. v. Truserv Corp.*, 2009 WL 424813 (Ky. 2009) (appeal from jury verdict); *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003) (although breach of fiduciary duty claim dismissed in motion to dismiss context, plaintiff granted leave to amend)).  If, as Defendants contend, Defendant Smith's involvement amounted to nothing more than an arm's length negotiation for the forward milk pricing contracts (*see* Defs.' Resp. to Pls.' Mot. to

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 13**

This decision, also, does not measure the merits of Plaintiffs' case against Defendant Smith (or, for that matter, Defendants as a whole), but rather is a conclusion that this Court does not have jurisdiction to fully examine those merits. Indeed, it is entirely possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed - either at the motion to dismiss stage or, later, on summary judgment. Because Idaho recognizes the possibility of a breach of fiduciary duty claim against Defendant Smith, and being careful not to confuse what may or may not be a weak claim with a spurious claim, this Court cannot conclude that Plaintiffs fraudulently joined Defendant Smith in their breach of fiduciary duty cause of action. For this additional reason, the case should be remanded.

**D.      Defendants' Efforts to Strike Portions of Plaintiff Ronald J. Aardema's Affidavit Do Not Prevent Remand**

In conjunction with their opposition to Plaintiffs' Motion to Remand, Defendants seek to strike portions of Plaintiff Ronald J. Aardema's Affidavit on the grounds that such testimony is speculative, conclusory, not based on personal knowledge, and/or are conclusions of law. *See* Defs.' Mot. to Strike, p. 2 (Docket No. 11).

•        Paragraph 7:   Defendants take issue with Plaintiff Ronald Aardema's incorporation of his account about what Defendant Smith meant regarding the execution of the Forward Milk Pricing Contracts. *See* Mem. in Supp. of Defs.' Mot. to Strike, pp. 4-5 (Docket No. 11, Att. 2). These statements highlight Plaintiff Ronald Aardema's understanding of various conversations between him and Defendant Smith, cross-referenced against the former's similar understanding of the applicable documents pertinent to the instant dispute - nothing more. There

_____

Remand, p. 16 (Docket No. 12)), a summary judgement motion, following the benefit of more discovery, may very well prove their point.

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 14**

is no basis to strike such statements, imperfect as they may be, when couched in such terms.

These statements can be tested at deposition or during cross-examination; to strike them now,

however, as "having nothing to do with what actually transpired" (*see id*. at p. 5) not only rejects

a litigant's proper ability to communicate his own belief concerning what took place, but also

gets to the merits of a dispute that has just begun.  Defendants' Motion to Strike in this respect is

therefore denied.

  •  Paragraph 8:   Defendants next object to Plaintiff Ronald Aardema's stated

reason for relying on Defendant Smith's statements:  "I . . . relied on the fact that [Defendant]

Smith was an employee of our cooperative and was obligated not to withhold relevant

information from us."  *See id*. at pp. 6-7.  According to Defendants, this statement is not only

conclusory and speculative, it also improperly introduces argument as to Defendant Smith's

alleged legal duties toward Plaintiffs.  *See id*.  The Court views the statement in question as a

mere recitation of Plaintiffs' reliance on Defendant Smith's alleged communications - a

necessary element of Plaintiffs' fraud claim.  For the reasons stated above, Plaintiff Ronald

Aardema's subjective basis for that reliance (whether right or wrong) is properly incorporated

into his affidavit.  Still, apart from his reasons supporting his reliance on Defendant Smith's

statements, any separate suggestion concerning Defendant Smith's legal obligations to Plaintiffs

is beyond Plaintiff Ronald Aardema's personal knowledge and will not be considered here.  In

this latter respect only, Defendants' Motion to Strike is granted for purposes of the Plaintiffs'

Motion to Remand; doing so, however, does not affect the Court's recommendation on

Plaintiffs' Motion to Remand.


**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 15**

•   <u>Paragraph 9</u>:   Defendants argue that Plaintiff Ronald Aardema's statements that Defendant Smith "withheld important information regarding the true intentions of NDA . . . ." again suggest an alleged legal duty on Defendant Smith's behalf to disclose undefined "important information."  *See id*. at p. 7.  Plaintiffs disagree, arguing that these comments are "a positive statement of fact that [Defendant] Smith did not disclose that NDA could speculate on the transaction."  *See* Opp. to Defs.' Mot. to Strike, p. 5 (Docket No. 26).  Notwithstanding Plaintiffs' pared down version of Plaintiff Ronald Aardema's actual sentiment, the statements within the affidavit itself are indeed problematic.  First, Plaintiff Ronald Aardema has no personal knowledge regarding NDA's "intentions."  Second, similar to Paragraph 8, Plaintiff Ronald Aardema arguably assigns a legal duty to Defendant Smith in a way that is improper in an affidavit format.  With only these considerations in mind, Defendants' Motion to Strike is granted for purposes of Plaintiffs' Motion to Remand; doing so, however, does not affect the Court's recommendation on Plaintiffs' Motion to Remand.

•   <u>Paragraph 10</u>:   Similar to Paragraph 7, Defendants object to Plaintiff Ronald Aardema's reference to Plaintiffs' collective understanding - based on "prior dealings with NDA and [Defendant] Smith" - "that NDA did not speculate in Forward Milk Pricing Agreements obtained from its members and would not be profiting on this type of arrangement with one of its members."  *See* Mem. in Supp. of Defs.' Mot. to Strike, p. 7 (Docket No. 11, Att. 2).  According to Defendants, such testimony "is entirely subjective, conclusory, and speculative . . . ."  *See id*. Defendants' objection is misplaced; this statement reflects only Plaintiff Ronald Aardema's *understanding* of what NDA did and did not do.  While such a subjective statement may not create an issue of fact when opposing a motion for summary judgment, it should not be stricken

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 16**

when considering the purpose of its submission - to relay Plaintiffs' understanding of certain events that contribute to the allegations raised in their Complaint; not to create an issue of fact in opposition to a motion for summary judgment.  Defendants' Motion to Strike in this respect is therefore denied.

•      <u>Paragraph 11</u>:  Defendants again object to Plaintiff Ronald Aardema's stated reason for entering into the Forward Milk Pricing Contracts:  " . . . [T]he nature of our cooperative relationship with NDA and the statements by the company and [Defendant] Smith's own representations that the December 2006 Forward Milk Pricing Contracts were the best deal . . . ."  *See id*. at pp. 7-8.  Defendants argue that "[s]uch subjective, conclusory legal opinions have no place in a witness's affidavit."  *See id*. at p. 8.  Like Paragraph 8, however, the Court views this statement as one that reflects Plaintiffs' reliance on Defendant Smith's alleged communications and therefore considers its content only insofar as stating an element of Plaintiffs' fraud claim.  *See supra* at p. 15.  This statement (and similar statements exhibiting Plaintiffs' alleged reliance) will not be stricken.  However, like Paragraph 9, Plaintiff Ronald Aardema later discusses NDA's and Defendant Smith's alleged "inten[tion] . . . "to profit from the arrangement[ ]" without the necessary personal knowledge.  *See supra* at p. 16.  Defendants correctly argue that such statements are unfounded, conclusory, and speculative.  *See* Mem. in Supp. of Defs.' Mot. to Strike, p. 8 (Docket No. 11, Att. 2).  Defendants' Motion to Strike in this latter respect will be granted for purposes of Plaintiffs' Motion to Remand; doing so, however, does not affect the Court's recommendation on Plaintiffs' Motion to Remand.

•      <u>Paragraph 12</u>:  Defendants lastly argue that Plaintiff Ronald Aardema's statement concerning what he would have done differently had he been "fully informed" of Defendants'

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 17**

"secret[ ] dealing to profit on [his] trust" should be stricken as "unavoidably speculative and conclusory." *See id.*  Although speculative, of more concern to the Court is Plaintiff Ronald Aardema's statement on the ultimate issue of Defendants' alleged liability; that is, Defendants' "secretly dealing to profit on [Plaintiffs'] trust," implicitly suggesting a breach of fiduciary duty in contravention of, generally, Defendants' and, specifically, Defendant Smith's alleged legal obligations.  Because it is difficult to parse out an innocuous segment within Paragraph 12, Defendants' Motion to Strike in this respect will be granted for purposes of Plaintiffs' Motion to Remand; doing so, however, does not affect the Court's recommendation on Plaintiffs' Motion to Remand.

### III.  RECOMMENDATION

In accordance with the foregoing, it is hereby RECOMMENDED that Plaintiffs' Motion to Remand (Docket No. 6) be GRANTED and the matter be remanded to the Fifth Judicial District Court for the State of Idaho.

### IV.  ORDER

In accordance with the foregoing, it is hereby ORDERED that Defendants' Motion to Strike Portions of the Affidavit of Ronald J. Aardema (Docket No. 11) is GRANTED in part and DENIED in part consistent with the rationale included above.  Those portions of Plaintiff Ronald Aardema's Affidavit that are to be stricken, however, are not integral to this Court's recommendation that Plaintiff's Motion to Remand (Docket No. 6) be granted.

DATED:  **June 17, 2009**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**REPORT AND RECOMMENDATION/MEMORANDUM DECISION AND ORDER - 18**